IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM HENDERSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 1:18-cv-424-TFM-M |
| | : | |
| MOBILE COUNTY BOARD OF | : | |
| EDUCATION, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Board of School Commissioners of Mobile County's (the "Board") *Motion for Summary Judgment and Supporting Brief*. Doc. 14, filed August 29, 2019. The motion has been fully briefed (Docs. 14, 17, 18, 19, 20) and is ripe for review. Having considered the motion and relevant law, the Court finds the motion for summary judgment is due to be **DENIED**.

**I.      JURISDICTION**

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17; 42 U.S.C. § 1981; and 42 U.S.C. § 1983.

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

**II.      PROCEDURAL AND FACTUAL BACKGROUND**

**A.      Procedural Background**

On October 1, 2018, Plaintiff William Henderson ("Plaintiff" or "Henderson") originally

filed his Complaint in this Court. Doc. 1. Henderson brings a claim of race discrimination pursuant to Title VII, 42 U.S.C. § 1981, and 42 U.S.C § 1983 against the Board. *Id*. In Henderson's Complaint, he states he filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 19, 2016. *Id*. ¶ 23. The Board filed its Answer to the Complaint on October 31, 2018. Doc. 4.

On August 29, 2019, the Board filed the instant motion for summary judgment in which it requests the Court dismiss Plaintiff's claims. Doc. 14. The Court entered a submission order for the motion. Doc. 16. Plaintiff timely filed his reponse and evidentiary materials in support, and the Board filed its reply and evidentiary materials in support. Docs. 17-20. The motion is fully briefed and ripe for review.

**B.    Factual Background**

Henderson, who is African American, completed multiple degree programs at the University of South Alabama: secondary education, social science composite degree in 1996, master's degree in counseling in 2002, and administrative certification in 2004. Doc. 1 ¶ 4; Doc. 18-1 at 3-4. In 2014, Henderson completed the educational specialist degree in instructional leadership program at the University of West Alabama. *Id*. at 4-5.

Henderson began teaching in the Mobile County Public School System ("MCPSS") in 1996 when he performed his student teaching at Davidson High School. *Id*. at 8. From 1996 to 2002, Henderson was a teacher at Theodore High School where he taught social studies and was the track and field coach. *Id*. at 5-6. From 2002 to 2004, Henderson was a guidance counselor at Spencer Elementary School where he also served as an assessment team leader and achievement specialist. *Id*. at 6. In Summer 2004 at Spencer Elementary School, Henderson became an administrative intern, which is a position that is similar to an assistant principal, and he continued

in that position for one (1) year.  *Id.*  In Summer 2005, Henderson was assigned to Mae Eanes

Middle School as an assistant principal and he stayed in that position until 2007, when he was

assigned to LeFlore Preparatory Academy as an assistant principal, a position he held until 2013.

*Id.*  That year, Henderson was assigned to Murphy High School as an assistant principal, a position

he held for four (4) years.  *Id.* at 6-7.  In Summer 2017, Henderson was assigned to LeFlore Magnet

High School as a principal, the position that he continues to hold.  *Id.* at 7.

The MCPSS's relevant procedural steps to select a principal are as follows:

1.      Determination made of administrative position vacancy.
2.      Human Resources issues announcement of vacancy and posts/advertises the
vacancy.
3.      Human Resources accepts applications from interested individuals who are
on the Eligible Candidate Roster (ECR).  Current employees must complete the
Alabama State Department of Education on-line Internal Employee Application
and submit a resume.  If the applicant is not a current MCPSS employee, he/she
must complete the Alabama State Department of Education on-line application and
submit a resume.
4.      After posted deadline, Human Resources will submit eligible applicants to
the appropriate assistant superintendent.
5.      The assistant superintendent in whose area the vacancy occurs reviews the
applications and determines which applicants will be called for a face-to-face
interview with a committee.
6.      Committee interviews are held.  In all cases, a minimum of three candidates
are interviewed for each vacant position.

**For principal vacancies**, an Assistant Superintendent for Academic Affairs will
chair the interview committee which will be composed of

- ✓      Other Academic Affairs Assistant Superintendents
- ✓      A principal selected by the Assistant Superintendent who is chairing
  the committee
- ✓      Central office representative from Curriculum and Instruction
- ✓      A community or parent representative of the school where the
  vacancy occurs
- ✓      A representative from Human Resources

. . .

Each committee will meet at a time and a place determined by the presiding

assistant superintendent to review the records of all persons to be interviewed, to develop interview questions, and to conduct the interviews. Each person interviewed will be asked the same questions and each answer will be assessed by the committee members using the same rubric or scoring guide.

All scores are tallied and ranked. The presiding assistant superintendent recommends a top candidate to the Superintendent in a letter giving the names of the interview committee, the date of the interview, and the names of all the candidates interviewed.

The Superintendent recommends to the Board of School Commissioners one candidate for approval.

Doc. 18-4 at 3-4. The top candidate is the candidate with the highest score from the committee interviews and whom the assistant superintendent recommends to the Superintendent. Doc. 18-2 at 7.

In June 2016, Henderson called Dr. Lynda Carroll, the assistant superintendent over Murphy High School, to convey his interest in a principal position. Doc. 18-1 at 9. Dr. Carroll informed Henderson the principal position at Theodore High School would be available soon. *Id.* The retiring principal at Theodore High School was Ronnie Rowell, who is white, and the student population at Theodore High School is predominantly white. Doc. 18-2 at 10; Doc. 18-3 at 23. Henderson applied online for the Theodore High School principal position. Doc. 18-1 at 9. Eventually, Henderson received a phone call during which he was told to report to the Office of Academic Affairs for an interview for the Theodore High School principal position. *Id.* at 11.

Henderson's interview was held on June 28, 2016, before a panel of interviewers that included Cliff Allred, a curriculum representative; Assistant Superintendent Dr. Linda Carroll; Assistant Superintendent Phaedra Fox; Sylvia Hutto, a parent representative for Theodore High School; Sharon Magee with Special Services; and John Powell, a Human Resources representative. Doc. 18-1 at 12; Doc. 18-9 at 2. During Henderson's interview, each of the panel members asked

him questions, took notes, and determined his overall score. *Id.* Henderson's interview lasted approximately forty-five (45) minutes. Doc. 18-1 at 12.

In total, the panel interviewed eight (8) candidates for the Theodore High School principal position: Henderson, Wendy Clanton, Wendell Ellis, Robert Murphy, Nelson Parker, Regina Reese, Jennifer Sullivan, and Craig Williams. Doc. 18-9 at 3. Two (2) score spreadsheets for the candidates who interviewed for the Theodore High School principal position were produced. *Id.*; Doc. 18-10 at 3. In the first spreadsheet, Henderson received a total score of 130, which was the highest of the listed candidates. Doc. 18-9 at 3. In the second spreadsheet, David Diaz and Charles Menton were included, and Diaz received a total score of 144, Henderson received a total score of 145, and Menton received a total score of 152. *Compare id. with* Doc. 18-10 at 3; Doc. 18-10 at 3. Also in the second spreadsheet, Assistant Superintendent Reginald Eggleston was included as a member of the interview panel, and he provided a score for Henderson; however, Henderson did not recall Mr. Eggleston's presence at his interview and a handwritten score sheet was not produced to corroborate Mr. Eggleston's attendance. Doc. 18-10 at 3; Doc. 18-1 at 12.

Neither Diaz nor Menton interviewed with the same panel of interviewers as Henderson. Doc. 18-11 at 2-6. Both Diaz and Menton interviewed with a panel for the Hankins Middle School principal position, which occurred on April 25, 2016, and Menton also interviewed with a panel for the Denton Magnet principal position, which occurred on April 26, 2016. *Id.* However, Diaz, Henderson, and Menton all applied for the Theodore High school principal position. Doc. 19-1 ¶ 5. It was the Board's policy to bank interview scores from previous panel interviews that would be used for positions for which a candidate would subsequently due to the number of openings for administrative positions at the time. *Id.* ¶¶ 3-4; *see also* Doc. 19-2 at 2-3.

After Henderson's panel interview for the Theodore High School principal position,

Superintendent Martha Peek's secretary contacted Henderson to schedule a follow-up interview for the next morning, June 30, 2016.  Doc. 18-1 at 13-14; Doc. 18-14 at 2.  At the interview, Superintendent Peek stated she had scheduled interviews for the Theodore High School principal position with Henderson and other top candidates to determine who she would recommend to the Board for the position.  Doc. 18-11 at 15.  The interview lasted between forty (40) and forty-five (45) minutes, during which Superintendent Peek asked Henderson either six (6) or seven (7) questions.  *Id.* at 15, 17.  The afternoon of Henderson's interview with Superintendent Peek, he discovered he was not recommended to the Board by Superintendent Peek for the position.  *Id.* at 23-24.  Superpintendent Peek ultimately recommended Menton, who is white, to the Board for the position.  Doc. 18-17 at 2; Doc. 18-15 at 2; *see also* Doc. 18-18 at 2.

The following week, Superintendent Peek called Henderson to offer him a position as a middle school principal, which he declined.[1]  *Compare id.* at 26-27 *with* Doc. 18-18 at 2.  In Summer 2017, Henderson was appointed principal of LeFlore Magnet High School, the student population of which is predominantly African American.  Doc. 18-1 at 7, 30-31; Doc. 18-3 at 15.

Superintendent Peek explained in her deposition why she did not recommend Henderson for the Theodore High School principal position as follows:

> The school needed someone that had, you know, no connections to the school, that would come in - - the thing that comes to my mind is, you know, a new broom sweeps clean.  But somebody who had come in and who had not been involved, there were long-time staff members there who had been there a number of years. And there just needed to be that positive feeling tone of someone who was, you know, brand new coming into that school.  Mr. Henderson had been at the school before.

---

[1] Henderson stated Superintendent Peek offered him the Chastang Middle School principal position, while Superintendent Peek stated she offered Henderson the Hankins Middle School principal position.  *Compare* Doc. 18-1 at 26-29 *with* Doc. 18-2 at 15-16.

Doc. 18-2 at 29.  Menton had no connections to Theodore High School.  *Id.*  In an email response to the EEOC's investigation into the subject matter of this action, Superintendent Peek explained her recommendation of Menton as follows:  "One of the applicants, Mr. Menton, had a stronger follow-up interview and particularly expressed a more robust focus on developing a balanced academic program at Theodore High School than the other two candidates."  Doc. 18-18 at 2.

### III.    STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial.  FED. R. CIV. P. 56(a) and (b).  Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'").  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).[2]  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  Only disputes about the material facts will preclude the granting of summary judgment. *Id.*

---

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

The movant bears the initial burden of proof.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552.

A party must support its assertion that there is no genuine issue of material fact by "citing to

particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other

materials" or by "showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

FED. R. CIV. P. 56(c)(1).  The admissibility of evidence is subject to the same standards and rules

that govern admissibility of evidence at trial.  *Clemons v. Dougherty County*, 684 F.2d 1365, 1369

n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir.

1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go

beyond the pleadings and designate specific facts showing there is a genuine issue for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348,

1356, 89 L. Ed. 2d 538 (1986).  "A genuine issue of material fact exists when 'the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'"  *Moore ex rel. Moore v.

Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510).  The court must view the facts and draw all reasonable inferences in favor of the non-

moving party.  *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043

(11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences

therefrom in the light most favorable to the party opposing the motion.").  However, to avoid

summary judgment, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356

(citations omitted).  Conclusory assertions, unsupported by specific facts, presented in affidavits

opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## IV.   DISCUSSION AND ANALYSIS

Henderson claims the Board discriminated against him when it did not select him for the Theodore High School principal position and selected a less qualified white candidate for the position. Doc. 1. ¶¶ 26-34. The Board concedes Henderson has established a *prima facie* case of race discrimination; however, it argues it has produced sufficient non-discriminatory reasons for the alleged discriminatory act and there is not substantial evidence to show the act was a pretext for discrimination. Doc. 14 at 4, 8.

"Title VII and [42 U.S.C.] § 1981 'have the same requirements of proof and use the same analytical framework.'" *Chapter 7 Tr. V. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256-57 (11th Cir. 2012) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Consequently, the Court will address them concurrently.

"Direct evidence of discrimination is 'evidence which reflects a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*,

Page 9 of 14

196 F.3d 1354, 1357 (11th Cir. 1999)).  Direct evidence is "evidence that, if believed, proves [the]

existence of [a] fact without inference or presumption."  *Id.* (quoting *Burrell v. Bd. of Trs. of Ga.*

*Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)).  "'[O]nly the most blatant remarks, whose

intent could mean nothing other than to discriminate on the basis of' some impermissible factor

constitute direct evidence of discrimination."  *Id.* (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342

n.2 (11th Cir. 2002)).

    While Henderson has identified a white candidate for the position for which Henderson

had applied who was offered that same position, that is not direct evidence that Henderson was not

hired for that position because of his race.  Rather, it requires inference.  Therefore, Henderson

must rely on circumstantial evidence to support his claim of race discrimination.

    Since Henderson relies on circumstantial evidence, the burden-shifting framework that is

outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973)

[hereinafter McDonnell Douglas], applies.

> If a Title VII plaintiff establishes a prima facie case of discrimination, the burden
> shifts to the employer to articulate a legitimate, nondiscriminatory reason for its
> actions.  *McDonnell Douglas* [ ], 411 U.S. [at] 802-03, 93 S. Ct. [at] 1824-25 [ ]).
> If the employer articulates a legitimate, nondiscriminatory reason for its actions,
> "the presumption of discrimination is rebutted, and the burden of production shifts
> to the plaintiff to offer evidence that the alleged reason of the employer is a pretext
> for illegal discrimination."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087
> (11th Cir. 2004); *see also Tex. Dep't of Cmty. Aff. v. Burdine*, 450 U.S. 248, 255-
> 56, 101 S. Ct. 1089, 1094-95, 67 L. Ed. 2d 207 (1981).  The plaintiff must meet the
> reason proferred head on and rebut it.  *Wilson*, 376 F.3d at 1088.  If the employer
> proffers more than one legitimate, nondiscriminatory reason, the plaintiff must
> rebut each of the reasons to survive a motion for summary judgment.  *Chapman v.*
> *AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc).

*Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007).

    To establish a *prima facie* case, Henderson must show he "(1) was a member of a protected

class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was

replaced by someone outside the protected class or that her employer treated similarly situated employees outside of her class more favorably." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).

As previously stated, the Board concedes Henderson has established a *prima facie* case because he is a member of a protected class, was qualified for the Theodore High School principal position, and the person selected for the position was outside of Henderson's protected class. Doc. 14 at 4.  The Court agrees.

Since Henderson has establish a *prima facie* case of race discrimination, the burden shifts to the Board to "articulate a legitimate nondiscriminatory reason for its actions." *Crawford*, 482 F.3d at 1308 (citing *McDonnell Douglas*, 411 U.S. at 802-03, 93 S. Ct. at 1824-25).  The Board argues Henderson was not hired for the Theodore High School principal position because the position was filled through the normal hiring procedures, both Henderson and Menton were qualified for the position, and Superintendent Peek's recommendation of Menton was based on the results of her follow-up interviews with the top candidates and Menton's lack of connections with Theodore High School. *See* Doc. 14 at 5-7.

Since the Board has articulated legitimate, nondiscriminatory reasons for its action, "the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason[s] of the employer [are] a pretext for illegal discrimination." *Crawford*, 482 F.3d at 1308 (quoting *Wilson*, 376 F.3d at 1087).  Henderson argues the Board's stated reasons are pretextual because the Board allowed Menton to bypass the panel interview, the Board fabricated scores for Henderson and Menton to show Menton was interviewed by the same panel as Henderson and received the highest score, Superintendent Peek's reasons for recommending Menton are devoid of specificity and incapable of rebuttal, and Superintendent

Page 11 of 14

Peek's stated reason that Theodore High School required a "new broom" did not apply when Henderson was later hired as principal of LeFlore Magnet High School.  Doc. 17 at 19-28.

The Court will address Henderson's argument that the Board fabricated scores for Henderson and Menton to show Menton was interviewed by the same panel as Henderson and received the highest score.  Doc. 17 at 21-24.  According to Superintendent Peek, after the panel interview scores are reported to the superintendent, she conducts follow-up interviews of the top candidates, which was not a written policy but was performed by Superintendent Peek and former superintendents before they made their recommendation for a position to the Board.  Doc. 18-2 at 8-9.

Of the interview scores for the Theodore High School principal position that were reported to Superintendent Peek, Diaz, Henderson, and Menton had the top three (3) scores of 144, 145, and 152, respectively, and were selected by Superintendent Peek for follow-up interviews.  Doc. 18-4.  Those scores were based on seven (7) panel interviewers' scores.  Doc. 18-10.  However, the panel interview scores for the Theodore High School principal position that were submitted to Superintendent Peek do not reflect Henderson's original interview score or either of Menton's previous interview scores.  *Compare* Doc. 18-10 at 3 *with* Doc. 18-11 at 2-6.  Henderson's original panel interview score was 130, which was the highest score of the candidates who interviewed for the Theodore High School principal position, and was conducted by six (6) interviewers for an average interviewer score of 21.67.  Doc. 18-11 at 2.  Menton's previous interview scores included a score of 176 that was from a nine-person interview panel for the Denton Magnet principal position for an average interviewer score of 19.56 and a score of 133 that was from a seven-person interview panel for the Hankins Middle School principal position for an average interviewer score of 19.00.  *Id.*

Page 12 of 14

While the Board claims it was their policy to bank interview scores from previous panel interviews that would be used for positions for which a candidate would subsequently apply, Menton's previous interview scores for the Denton Magnet and Hankins Middle School principal positions do not appear on the Theodore High School principal position interview scoresheet that was submitted to Superintendent Peek.  Doc. 19-1 ¶¶ 3-4; *see also* Doc. 19-2 at 2-3; *compare* Doc. 18-10 at 3 *with* Doc. 18-11 at 2-6.  The Board fails to explain how Menton was awarded his score. This, in turn, calls into question whether Menton was, in fact, a top candidate for the Theodore High School principal position who would have been selected for a follow-up interview with Superintendent Peek if not for his unexplained interview score.

Based on the facts before the Court and drawing all reasonable inferences in favor of Henderson – as the Court must do -- the Court finds Henderson has offered sufficient evidence that shows the Board did not follow its own hiring procedures and has raised a genuine issue of material fact about whether the Board's reason was a pretext for discrimination.

Though the Board proffered multiple legitimate, nondiscriminatory reasons for its action, Henderson rebutted the Board's reason that it followed its normal hiring procedures, which negates all of the Board's other reasons that both Henderson and Menton were qualified for the position and Superintendent Peek's recommendation was based on her subjective criteria.  In short, but for the unexplained score, Menton may not have been a "top candidate" who would have had a follow-up interview with Superintendent Peek and the Board's remaining reasons rely on whether Menton was, in fact, a "top candidate."  Therefore, Henderson has properly rebutted all of the Board's proffered reasons for its action.  *See Crawford*, 482 F.3d at 1308 ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.")

## V.    CONCLUSION

Based on the foregoing discussion and analysis, Defendant Board of School Commissioners of Mobile County's Motion for Summary Judgment is **DENIED**.

**DONE** and **ORDERED** this the 3rd day of February 2020.

         s/Terry F. Moorer
         TERRY F. MOORER
         UNITED STATES DISTRICT JUDGE